**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| DAVID A. FREEMAN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 25-CV-11027-AK |
| TOWN OF WATERTOWN, WATERTOWN POLICE DEPARTMENT, CHIEF JUSTIN HANRAHAN, LT. KENNETH SWIFT, DET. MIGUEL COLÓN, JOHN/JANE DOES 1-10, ZACHARY HURLEY, and TARA FREEMAN, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM AND ORDER ON DEFENDANTS TOWN OF WATERTOWN, WATERTOWN POLICE DEPARTMENT, JUSTIN HANRAHAN, KENNETH SWIFT, AND MIGUEL COLÓN'S MOTION TO DISMISS

**KELLEY, D.J.**

Plaintiff David A. Freeman, proceeding *pro se* and as sole active fiduciary of Boston Jeepz, Inc. ("Boston Jeepz"), brings this action for the alleged burglary of Boston Jeepz by Defendant Zachary Hurley. Freeman alleges, *inter alia*, that Defendants Town of Watertown ("Town"), the Watertown Police Department ("Watertown Police"), Chief of Police Justin Hanrahan, Lieutenant Kenneth Swift, and Detective Miguel Colón (collectively, "Defendants") failed to properly investigate the incident and preserve relevant evidence. Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim. [Dkt. 79]. For the following reasons, Defendants' Motion to Dismiss is **GRANTED**.

## I.    BACKGROUND

The following allegations are drawn from the Amended Complaint [Dkt. 58] and its

1

attached Exhibits, unless otherwise noted, and assumed as true.  Freeman is the sole active fiduciary of Boston Jeepz, a Massachusetts-based automotive services company. [Id. ¶¶ 3-4]. Previously, Defendant Tara Freeman, Plaintiff's ex-wife, and Hurley, Plaintiff's then-stepson, shared stock ownership of Boston Jeepz. [Dkt. 94-1 at 24].  On or around October 21, 2024, Ms. Freeman and Hurley transferred all stock ownership to Plaintiff, though they contend that Plaintiff did not sign the transfer documents, thus completing the transfer, until December 5, 2024. [See id.].  On November 4, 2024, Ms. Freeman filed for divorce against Plaintiff in state probate court.[1] See Freeman v. Freeman, No. MI24D3407DR (Mass. Middlesex Cnty. Probate Ct. Mar. 9, 2026).  A judgment of divorce was entered on March 9, 2026, including division of assets. Id.

On the nights of November 25 and December 2, 2024, Hurley allegedly used Freeman's identity and contact information to authorize the removal of Boston Jeepz's corporate assets, including two vehicles, a scanner, computer, toolbox, and sports memorabilia. [Dkt. 58 ¶¶ 12A, 15; Dkt. 58-4 at 4, 14].  On December 3, 2024, Freeman placed an emergency call to the Watertown Police to report the alleged burglary. [Dkt. 58 ¶ 12B].  Responding officers arrived at the premises, reviewed onsite security footage, and interviewed eyewitnesses. [Id. ¶¶ 12A, 12B, 12].  Freeman identified Hurley as a suspect and informed the officers that Hurley's credibility had been "formally impeached" in 2023. [Id. ¶ 12].  Specifically, the Massachusetts Civil Service Commission bypassed Hurley's police officer application for the City of Newton based on his "negative professional references, untruthfulness and unsuitability" for the role. [Dkt. 48-2 at 10-

---

[1] The Court may take judicial notice of other court proceedings. Kader v. Sarepta Therapeutics, Inc., No. 14-CV-14318, 2016 WL 1337256, at *15 n.10 (D. Mass. Apr. 5, 2016) (noting that courts "may take judicial notice of proceedings in other cases," though "it generally cannot do so for the truth of any matters discussed during those proceedings").

22].  The officers provided Freeman with an incident card and report number. [Dkt. 58 ¶ 12B].

Several days later, on December 6, 2024, Freeman followed up with the Watertown Police by emailing Chief Hanrahan. [Dkt. 58-4 at 4].  In that correspondence, Freeman alleged that Colón, the investigator assigned to the incident, was failing to properly investigate the matter, maintain records, and preserve relevant information. [See id.].  Freeman further alleges that Colón, who was not present at the scene, "authorized a report falsely implying [his] presence." [Dkt. 58 ¶ 14].  Hanrahan acknowledged the reported breaking and entering but referred the matter to Lieutenant Swift for further handling, and the matter was internally classified as a "civil dispute" instead of a felony. [Id. ¶¶ 12D, 13].

Approximately one month later, on January 18 and 30, 2025, Freeman reported to Swift that more servers belonging to Boston Jeepz had been stolen. [Id. ¶ 12F].  On January 30, 2025, the Watertown Police filed a criminal complaint against Hurley in the Waltham District Court, charging him with breaking and entering. [See Dkt. 58-4 at 2].  The complaint identified Freeman as the victim; however, Freeman was not called to attend the magistrate judge's April 29, 2025, show-cause hearing for the case. [Dkts. 58 ¶ 12C; 58-4 at 1].  During the hearing, the Watertown Police allegedly concealed Freeman's emergency call, the corresponding Computer-Aided Dispatch ("CAD") entry, and the incident card, and represented that "no incident" had occurred. [Id. ¶ 12B].  The magistrate judge found no probable cause existed supporting issuance of a formal complaint, though Hurley and Ms. Freeman admitted that they had possession of the servers and other items. [Dkt. 94-1 at 19].

Following the alleged burglary, Freeman sought insurance coverage for the lost assets. His insurer, however, required verification from law enforcement before processing the claim. On March 18, 2025, Freeman participated in a call with Swift and an insurance investigator,

3

during which Swift allegedly acknowledged that Hurley had committed the breaking and entering. [Dkt. 58 ¶ 19].  However, the police record was not updated to reflect the incident as a felony and instead remained categorized as a civil dispute. [See id.].

On March 19, 2025, Freeman sent a demand letter to the Watertown Police requesting release of the police report and related information, including the incident report, incident card, and a recording or documentation of his initial emergency call. [Id. ¶ 20; Dkt. 58-4 at 5]. Freeman alleges that the Watertown Police did not provide the requested information. [Dkt. 58 ¶ 21].  As a result, Freeman's insurance company denied coverage for lack of police verification, and Boston Jeepz ceased operations. [Id. ¶¶ 21, 23].

On April 14, 2025, Freeman filed this action in state court, which Defendants removed on April 18, 2025. [Dkt. 1].  On August 29, 2025, Freeman filed a Second Amended Complaint, alleging procedural due process violations, fraud on the court, denial of access to courts, violations of Title II of the Americans with Disabilities Act, constructive trust and accounting, and interference with insurance and property rights.  Defendants moved to dismiss all claims on October 27, 2025.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id.  Factual allegations must be accepted as

true, while legal conclusions are not entitled to credit. Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

## III.    DISCUSSION

Freeman asserts nine claims against Defendants.  For purposes of clarity and efficiency, the Court groups these claims into the following categories: Section 1983 claims, denial of access to courts, fraud on the court, disability discrimination, and interference with insurance/property rights.  Defendants move to dismiss all claims.

### A.    Proper Parties

Before turning to the merits of Freeman's claims, the Court addresses several threshold issues concerning the proper parties to this action.  First, Defendants contend that all claims brought against the Watertown Police must be dismissed because the department is an agency of the Town and therefore lacks capacity to be sued as a separate legal entity. [Dkt. 80].  The Court agrees.  As courts within this circuit have recognized, municipal police departments "ha[ve] no legal existence or liability to suit separate from [the municipality]," and "claims against [such police departments] . . . are subject to dismissal in their entirety." Douglas v. Bos. Police Dep't, No. 10-CV-11049, 2010 WL 2719970, at *2 (D. Mass. July 1, 2010) (citing Henschel v. Worcester Police Dep't, 445 F.2d 624, 624 (1st Cir. 1971); Stratton v. City of Boston, 731 F. Supp. 42, 46 (D. Mass. 1989)).  The Watertown Police is therefore not a proper defendant in this

action, and all claims against it are dismissed.

Next, Defendants contend that Freeman cannot proceed *pro se* in representing Boston Jeepz as a sole proprietorship.  The Court agrees.  Local Rule 83.5.5 states that "[a] corporation, partnership, limited liability company, trust, estate, *or other entity that is not an individual* may not appear *pro se*." See L.R., D. Mass. 83.5.5 (emphasis added); cf. O'Diah v. Volkswagen of Am., Inc., 91 Fed. App'x 159, 160 (1st Cir. 2004) ("We have interpreted [28 U.S.C. § 1654] as barring a non-lawyer from representing anyone but himself.").  Accordingly, to the extent Freeman claims he is representing Boston Jeepz, those claims are dismissed.

### B.      Section 1983 Claims (Counts I-V)

In Counts I through V, Freeman brings Section 1983 claims against Colón in his individual capacity, as well as Hanrahan and Swift in their official capacities and the Town under a theory of municipal liability.  Section 1983 "is a vehicle through which individuals may sue certain [state and local government officials and municipalities] for depriving them of federally assured rights." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008).  A claim under Section 1983 has two "essential elements": the defendant must have acted under color of state law, and his conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law. Rodríguez–Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997).  The second element requires the plaintiff to show "that the [defendant's] conduct was the cause in fact of the alleged deprivation." Id.

### 1.      Individual Capacity

Freeman asserts a procedural due process claim against Colón, alleging that Colón "authoriz[ed] redistribution" of certain assets to Boston Jeepz employees but not to him, thereby depriving him of personal property. [Dkt. 58 ¶ 16].  He alleges that Colón "refused to return [his] 60+ thousand dollars of personal tools" but "offer[ed] Zachary Hurley a chance to return" items

belonging to employee Michael Barbetta. [Dkt. 58-4 at 14, 28, 32].

A plaintiff may sue municipal officials in their individual capacity for damages arising from violations of the plaintiff's constitutionally protected rights. Lay v. City of Lowell, 759 F. Supp. 3d 247, 252 (D. Mass. 2024) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991)).  As relevant here, a valid procedural due process claim must first "identify a protected liberty or property interest," then "allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process." Gonzalez-Droz v. Gonzalez-Colón, 660 F.3d 1, 13 (1st Cir. 2011) (internal quotation marks and citation omitted).  The Due Process Clause "applies only to the acts of states, not those of private parties." Gerena v. P.R. Legal Servs., Inc., 697 F.2d 447, 452 (1st Cir. 1983).

Here, Freeman fails to state a plausible claim for relief because he has not identified any unconstitutional action by Colón.  Hurley, a private party, is the individual alleged to have stolen the items, not Colón.  Freeman does not allege that Hurley was acting as an agent of the Town, nor that Hurley's actions are imputable to Colón. Cf. Stypmann v. City & County of San Francisco, 557 F.2d 1338, 1342-44 (9th Cir. 1977) (finding procedural due process applies to vehicle towing because towing company acted as agent of the State).  While Freeman contends that Colón refused to return the items to him upon contacting Hurley, a law enforcement officer's retention of allegedly stolen property during an ongoing investigation alone does not establish deprivation under the meaning of the Due Process Clause. Cf. Rodgers v. Knight, 781 F.3d 932, 941 (8th Cir. 2015) ("Where retention of evidence is justified by pending charges or an arrest warrant, no further process is required. . . . If evidence is 'needed for an ongoing or proposed specific investigation,' law enforcement authorities are entitled to retain it.") (quoting Sovereign News Co. v. United States, 690 F.2d 569, 578 (6th Cir. 1982)).  This is particularly relevant

where, as here, ownership over the items was actively being reviewed in other proceedings (i.e., the magistrate judge's probable-cause hearing and the probate court divorce proceeding). Accordingly, because Freeman fails to plausibly allege that Colón deprived him of property within the meaning of the Fourteenth Amendment, this claim is dismissed.

### 2.    Official Capacity and Monell

Freeman next asserts Section 1983 claims against the Town, as well as against Hanrahan and Swift in their official capacities.  It is well-settled that "[a] suit against a public official in his official capacity is a suit against the government entity." Rosaura Bldg. Corp. v. Municipality of Mayaguez, 778 F.3d 55, 62 (1st Cir. 2015).  Accordingly, the claims against Hanrahan and Swift in their official capacities are effectively a claim against the Town.

To plead a Monell claim, a plaintiff must show that "the governmental body itself subjects a person to a deprivation of rights or causes a person 'to be subjected' to such deprivation." Strapponi v. Town of Blackstone, 802 F. Supp. 3d 244 (D. Mass. 2025) (internal quotations omitted) (quoting Connick v. Thompson, 563 U.S. 51, 60 (2011)).  Municipalities are responsible only for their own illegal acts and may not be held vicariously liable for their employees' actions. Haley, 657 F.3d at 51.  Instead, the plaintiff must show that the action was made pursuant to an official municipal "policy" or "custom." Id.  To make such a showing, the plaintiff may point to a standing policy or custom, the municipality's failure to properly train or supervise its officials, or a final policymaker's ratification of a lower official's action. See id.; Lavigne v. Great Salt Bay Cmty. Sch. Bd., 146 F.4th 115, 128 (1st Cir. 2025), cert. denied sub nom. Lavigne v. Great Salt Bay Com. Sch., No. 25-759, 2026 WL 858415 (U.S. Mar. 30, 2026).

As a threshold matter, Freeman does not identify an underlying constitutional violation for his Monell claims.  Monell can impose municipal liability only for underlying, identifiable

8

constitutional violations. See Lachance v. Town of Charlton, 990 F.2d 14, 31 (1st Cir. 2021) (quoting Kennedy v. Town of Billerica, 617 F.3d 520, 531 (1st Cir. 2010)).  As Freeman is proceeding *pro se*, the Court liberally construes his allegations as asserting procedural due process claims rather than dismissing them for this defect.

Proceeding to the merits, Freeman raises a variety of theories supporting his Section 1983 claims.  First, he claims that the Town, through Hanrahan, ratified Colón's retention of the allegedly stolen items.  As explained, Freeman fails to plausibly allege an underlying constitutional injury stemming from Colón's actions.  Accordingly, he likewise fails to plead a claim against the Town based on ratification.

Second, Freeman contends that the Town engaged in "secret" show-cause proceedings before the magistrate judge.  However, this claim fails because Freeman fails to plausibly allege that the Town itself caused this action.  The initiation, scheduling, and conduct of show-cause proceedings, as well as the issuance of related notices, are functions of the Waltham District Court, not the Town or its police department.  See Mass. G.L. ch. 218, § 35A ("The court, or said officer thereof, may upon consideration of the evidence, obtained by hearing or otherwise, cause process to be issued unless there is no probable cause to believe that the person who is the object of the complaint has committed the offense charged.").

Third, Freeman alleges that the Town maintained a policy of concealing or failing to preserve evidence from the alleged burglary, and that it failed to train or supervise officers on evidence preservation.  These allegations, however, do not state a plausible claim for Monell liability.  Because Freeman does not allege an official policy, he must allege a custom "so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61.  The Amended Complaint recounts only one incident allegedly mishandled, not a systemic pattern

affecting more than one plaintiff. See, e.g., Crandall v. Orono Police Dep't, No. 24-CV-00418, 2025 WL 1233198, at *3 (D. Me. Apr. 29, 2025) (finding no municipal custom where the plaintiff "describe[d] a single incident of alleged misconduct, which cannot, without more, demonstrate the existence of a municipal policy."). For the same reason, Freeman's failure-to-train theory fails. See Mazza v. City of Boston, 753 F. Supp. 3d 88, 96 (D. Mass. 2024), reconsideration denied, 780 F. Supp. 3d 325 (D. Mass. 2025) ("Allegations of one's own injury, unmoored from a pattern of conduct by the municipality, thus cannot support a Monell claim on a theory of failure either to train or supervise.").

Finally, Freeman alleges that the Town maintained a policy of "false reporting" and "downgrading" reported crimes in its internal database, that it failed to train or supervise officers with respect to crime classification, and that Hanrahan ratified such misclassification. None of these three bases are sufficient to state a claim. First, as explained, Freeman's allegations pertaining to one isolated event are insufficient to support liability as a municipal policy/custom or as a failure to train/supervise. See Crandall, 2025 WL 1233198 at *3; Mazza, 753 F. Supp. 3d at 96. As for ratification, a plaintiff must show that a final policymaker's actions are active, not passive, with respect to "both the subordinate's decision and the basis for it." Saunders v. Town of Hull, 874 F.3d 324, 330 (1st Cir. 2017); Lavigne, 146 F.4th at 128 (internal quotation marks and citation omitted). Here, Freeman merely alleges that Hanrahan "acknowledged" the breaking and entering, referred the matter to Swift, and "approved a course that misclassified the crime." [Dkt. 58 ¶ 29]. These actions are all passive rather than active. See Lavigne, 146 F.4th at 128 (finding supervisor's approval of a contract and statement about the alleged incident did not indicate active approval required for ratification claim); Brown v. City of Brockton, No. 24-CV-12048, 2025 WL 2677231, at *5 (D. Mass. Sep. 18, 2025) (finding failure to intervene or

10

discipline defendant after receiving video evidence of alleged incident insufficient for ratification).

### C.      Denial of Access to Courts (Count VI)

Freeman asserts a denial-of-access-to-courts claim, and, in support, urges the Court to draw an adverse inference based on spoliation of evidence.  The Court declines to adopt such an inference and, in any event, Freeman fails to state a claim.

The Court first addresses Freeman's request for an adverse inference.  Freeman alleges that the Town destroyed or failed to preserve evidence related to the alleged burglary, including the incident report and card, his emergency call, and surveillance footage.  An adverse inference for spoliation allows "a trier of fact . . . [to] infer from a party's obliteration of [evidence] relevant to a litigated issue that the contents of the [evidence] were unfavorable to that party." Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir. 1998).   To be entitled to such an inference, a party must show, among other things, that "there is evidence that has been spoiled (i.e., destroyed or not preserved)." Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 399 (1st Cir. 2012).

Freeman's allegations do not satisfy this standard.  The Amended Complaint offers only conclusory assertions that the Town concealed, destroyed, or failed to preserve evidence, without alleging facts supporting a reasonable inference that such materials were in fact destroyed, as opposed to not produced or not maintained in the manner Freeman expected. Cf. Am. Health Inc. v. Chevere, 37 F. Supp. 3d 561, 565 (D.P.R. 2014) (finding spoiled evidence where defendant deleted emails).  In addition, Freeman does not identify what adverse inference should be drawn from the purported spoliation or how the missing materials would support his claims.  The core facts underlying the alleged burglary, such as that an incident occurred, that Freeman contacted law enforcement, and that Hurley was involved, are not meaningfully in dispute for purposes of

11

this Motion.  On these allegations, the Court declines to draw any such spoliation inference.

In any event, even with an adverse inference, Freeman fails to state a plausible access-to-courts claim.  Access-to-courts claims originate from the Constitution,[2] and assert that the plaintiff was unlawfully prevented from utilizing the judicial system.  See Christopher v. Harbury, 536 U.S. 403, 413-15 (2002).  To state such a claim, a plaintiff must (1) show that the underlying claim that would have been brought is "nonfrivolous," (2) describe the conduct that denied the plaintiff access, and (3) identify a "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought."  Id. at 415 (citing Lewis v. Casey, 518 U.S. 343, 353 n.3 (1996)); see McIntyre v. United States, 336 F. Supp. 2d 87, 133 (D. Mass. 2004).  Common access-to-court claims include filing fees that bar indigent litigants from court access, or prison officials' restrictions that prevent or hinder incarcerated individuals from filing habeas petitions or other legal actions, such as by limiting access to legal resources.  Harbury, 536 U.S. at 413-14.

Freeman alleges that Defendants' failure to provide certain police records caused his insurance company to deny his claim for lack of verification.  Construed liberally, Freeman's theory appears to be that, without such records, he cannot pursue a lawsuit against his insurer for wrongful denial of coverage.  Even under such a theory, Freeman does not plausibly allege that Defendants' conduct foreclosed his ability to bring a claim.  At most, the allegations suggest that the absence of certain materials may complicate or weaken a potential insurance dispute.  Freeman does not allege that he was prevented from initiating suit, presenting his claims, nor that

---

[2] Courts have attributed the source of such claims to various constitutional provisions, including Article IV's Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment's Equal Protection and Due Process Clauses. Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002).

he is precluded from pursuing the allegedly concealed information through ordinary processes, including discovery or a public records request. Id. at 415 ("There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element."). Accordingly, Freeman has failed to plead a plausible access-to-courts claim.

### D.    Fraud on the Court (Count VII)

Freeman next asserts a fraud-on-the-court claim. Fraud-on-the-court claims are actions to "attack and vacate a prior judgment" on the basis that a party interfered with the judicial system's ability to impartially adjudicate the matter. Davidson v. Cao, 211 F. Supp. 2d 264 (D. Mass. 2002); Gonzalez Tomasini v. Steiner, 166 F.4th 184, 196 (1st Cir. 2026). These claims originate from Rule 60(b), which permits a federal court to grant relief from its own judgment. Davidson, 211 F. Supp. 2d at 264 (citing Fed. R. Civ. P. 60(b)). As a result, the doctrine "cannot be used to challenge conduct before a different court." King v. Fields, 790 F. Supp. 3d 32, 35 n.1 (D. Mass. 2025); see Beaulieu v. Bank of Am., N.A., No. 14-CV-00023-GZS, 2014 WL 4843809, at *10 n.5 (D. Me. Sep. 29, 2014) ("[F]raud on the court is not available as an independent cause of action based on conduct that occurred before a different court.").

Here, Freeman alleges that the Town failed to produce documents and evidence at a Waltham District Court magistrate's show-cause hearing and excluded him from that proceeding. However, this claim is premised on alleged fraud affecting the Waltham District Court, not this Court. Because the alleged misconduct occurred in a separate judicial forum, Freeman fails to state a plausible fraud-on-the-court claim.

### E.    Americans with Disabilities Act (Count VIII)

Freeman alleges that the Town discriminated against him on the basis of his physical disability arising from a prior arm surgery and "out-of-state status." Title II of the Americans

with Disabilities Act ("ADA") prohibits public entities from excluding qualified individuals with

disabilities and requires reasonable accommodations where necessary to provide meaningful

access. See Tennessee v. Lane, 541 U.S. 509, 532 (2004).  To state a claim under Title II, a

plaintiff must plausibly allege that: "(1) he is a qualified individual with a disability; (2) he was

excluded from participation in, or denied the benefits of a public entity's services, programs, or

activities or was otherwise discriminated against; and (3) this exclusion, denial of benefits, or

discrimination was by reason of [his] disability." Sosa v. Mass. Dep't of Correction, 80 F.4th 15,

30 (1st Cir. 2023) (internal quotation marks and citations omitted).

Freeman's allegations are insufficient to state a Title II claim for several reasons.  As

explained prior, the Town does not control the proceedings held by the Waltham District Court

and is not liable for another entity's actions.  Moreover, the hearing notice—which Freeman filed

with the Court—reflects that the hearing was, in fact, conducted via a remote videoconferencing

platform, and included a meeting ID with no password requirement, indicating remote access

was available.[3] [Dkt. 94-1 at 22].  Accordingly, Freeman's ADA claim is dismissed.

### F.        Interference with Insurance/Property Rights (Count X)

Finally, Freeman alleges that the Town's suppression of evidence and misclassification of

the incident caused his insurer to deny his claim.  Defendants construe this claim as one for

intentional interference with contractual relations, which the Court adopts, given the lack of

clarity in the Amended Complaint.  Under the Massachusetts Tort Claims Act ("MTCA"), public

employers are liable for certain negligent or wrongful acts of their employees acting within the

scope of employment. Salem v. Stoneham Police Dep't, 752 F. Supp. 3d 282, 310 (D. Mass.

---

[3] Because the factual allegations in the Amended Complaint are "expressly linked to" and "dependent upon" the hearing notice, and the authenticity of the hearing notice is not challenged, the hearing notice "trumps" any conflicting allegations in the Amended Complaint. Duggan v. Martorello, 596 F. Supp. 3d 158, 166 (D. Mass. 2022).

2024).  However, the statute bars "any claim arising out of an intentional tort." Id. (citing Mass. Gen. L. ch. 258, § 10(c); Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 157 (D. Mass. 2012), aff'd, 714 F.3d 29 (1st Cir. 2013).  Here, intentional interference with contractual relations is an intentional tort, and thus is barred under the MTCA.  And even construing his claims as against the individual Defendants in their individual capacity, he fails to plead any facts that they "knowingly interfered with that contract" or that such interference was "improper in motive or means," as required to state a claim of intentional interference. Harrison v. NetCentric Corp., 433 Mass. 465, 476 (2001)

To the extent Freeman's claim can be construed as a claim for interference with property rights arising under the Takings Clause, it also fails.  Freeman does not allege that the Town has "condemned" or taken his property for public use within the meaning of the Fifth Amendment, including any insurance proceeds or allegedly stolen items.  At most, he alleges indirect economic harm resulting from a law enforcement investigation.  Such consequences, arising from the lawful exercise of the Town's police powers, do not constitute a taking. See Melo-Tone Vending, Inc. v. United States, 666 F.2d 687, 689-90 (1st Cir. 1981) (citing Omnia Com. Co. v. United States, 261 U.S. 502, 510 (1923); Legal Tender Cases, 12 Wall. 457, 551 (1870)).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Dkt. 79] is **GRANTED**.

**SO ORDERED.**

Dated: June 11, 2026                                      /s/ Angel Kelley

                                                         Hon. Angel Kelley
                                                         United States District Judge

15